## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **DANIEL MILLER, by and through his duly appointed power of attorney, WALTER MILLER** | **CASE NO. 5:20-CV-00930** |
| **Plaintiff,** | **JUDGE PAMELA A. BARKER** |
| **-vs-** | |
| **ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA,** | **MEMORANDUM OF OPINION AND ORDER** |
| and | |
| **JOHN DOES NO. 1 THROUGH 5,** | |
| **Defendants.** | |

Currently pending is Defendant Allianz Life Insurance Company of North America's Motion to Dismiss pursuant to Fed. R. Civ. P. 8 and 12(b)(6), filed on April 30, 2020.  (Doc. No. 3.)  Plaintiff Daniel Miller, by and through his duly appointed power of attorney, Walter Miller, filed a Brief in Opposition on May 29, 2020.  (Doc. No. 8.)  Defendant filed a Reply In Support of its Motion to Dismiss on June 12, 2020.  (Doc. No. 9.)

For the following reasons, Defendant's Motion to Dismiss is GRANTED.  As to Plaintiff's claims that are dismissed, the dismissal is without prejudice.

## I.     Procedural History

On March 30, 2020, Plaintiff Daniel Miller, by and through his duly appointed power of attorney, Walter Miller ("Plaintiff" or "Miller"), filed a Complaint in the Court of Common Pleas of Stark County, Ohio against Allianz Life Insurance Company of North America ("Defendant" or "Allianz Life").  (Doc. No. 1-1.)  Miller alleged three claims against Allianz Life: (1) breach of

fiduciary duty, (2) negligent advice, and (3) negligent hiring and supervision.  (*Id.* at ¶¶ 1 – 24).  On April 30, 2020, Allianz Life filed a Notice of Removal, as well as a Motion to Dismiss pursuant to Fed. R. Civ. P. 8 and 12(b)(6).  (Doc. Nos. 1, 3.)  In its Motion, Allianz Life moved for dismissal of all three of Miller's claims.  (Doc. No. 3.)  Miller filed a Brief in Opposition to Allianz Life's Motion to Dismiss on May 29, 2020, to which Allianz Life replied.  (Doc. Nos. 8, 9.)  Thus, Allianz Life's Motion is now ripe and ready for resolution.

## II.    Factual Allegations

The Complaint contains the following factual allegations.  Daniel Miller is the 94-year-old surviving spouse of Keturah V. Miller ("Keturah").  (Doc. No. 1 at ¶ 1.)  Prior to her death at the age of 90,[1] Keturah purchased an Allianz Life annuity, "which had a cash value in excess of $88,000." (*Id.* at ¶ 3.)  According to the terms of Keturah's annuity contract, Miller would have received the cash value of the annuity in the event of Keturah's death.  (*Id.* at ¶ 4.)

According to Miller, on August 13, 2019, unknown Allianz Life agents and/or employees ("John Does 1 – 5") "induced Keturah to exercise an Annuity Option Agreement that removed the cash value of the Annuity, and instead paid Keturah the amount of $1,034.31 for life . . . ."  (*Id.* at ¶ 5.)  At the time Keturah exercised this Annuity Option Agreement, she was 90 years old and of diminished health.  (*Id.* at ¶ 6.)  Miller alleges that Keturah was raised in an Amish family and possessed a limited formal education, including limited knowledge of "financial, insurance, and/or investment products . . . ."  (*Id.*)  As a result, Keturah "lacked the capacity and ability to provide informed consent to the change to the Annuity."  (*Id.*)  On October 13, 2019, Keturah passed away,

---

[1] According to the copy of Keturah's annuity contract that Allianz Life attached to its Motion, Keturah purchased this annuity on August 31, 2007.  (Doc. No. 3-1.)

just a few months after being "duped into making the changes suggested, advised, and/or coerced from the Defendants."  (*Id.* at ¶ 7.)

Because Keturah exercised the "Joint and 100% Survivor" equal installment option, Miller will "receive the amount of $1,034.31 per month" for the rest of his life, rather than a lump-sum payment of the Annuity value, $88,000.  (*Id.* at ¶ 8; PageID# 12.)

**III.    Standard of Review**

Defendant moves for dismissal on the basis of failure to meet minimum pleading requirements under Fed. R. Civ. P. 8 and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Under Fed. R. Civ. P. 8(a),

A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough

facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n*., 528 F.3d 426, 430 (6th Cir.2008) (quoting in part *Twombly*, 550 U.S. at 555–56, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (quoting *Twombly,* 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

In ruling on a Rule 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430.  *See also Brent v. Wayne County Dep't of Human Services*, 901 F.3d 656, 694 (6th Cir. 2018) (same); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) ("This circuit has further 'held that 'documents that a defendant attaches to a motion to

dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'").

## IV.    Analysis

### A.  Breach of Fiduciary Duty (Count One)

In Count One, Miller alleges that Allianz Life breached a fiduciary duty to his late wife, Keturah.  Miller alleges that Allianz Life "has a duty [to] provide both insurance and financial advisory services and to act in the best interest of the insured and the insured intended beneficiary, and to provide informed consent, advice, and counsel in the best interest of the insured and her intended beneficiary."  (Doc. No. 1-1 at ¶ 9.)  Miller alleges that Allianz Life knew, or should have known, that allowing a frail, 90-year-old woman to convert an $88,000 annuity "to a fixed monthly amount with **no** death benefit would substantially and dramatically reduce the value of the Annuity to both Keturah and to the Plaintiff."  (*Id.* at ¶ 10.)  Miller alleges that Allianz Life's "actions were negligent, wanton and willful, and constituted a breach of its fiduciary duty to provide a suitable insurance product and/or selection for their client" and that he suffered damage as a result.  (*Id.* at ¶¶ 11, 12.)

In its Motion, Allianz Life argues that Miller's breach of fiduciary duty claim should be dismissed because Allianz Life did not have a fiduciary relationship with Keturah.  (Doc. No. 3 at PageID# 23.)  Allianz Life sold Keturah an annuity in an arm's-length deal and the two entered a contractual, ordinary business relationship, not a fiduciary one.  (*Id.* at PageID# 24.)  Allianz Life acknowledges that while some contractual relationships may grow into fiduciary ones, Keturah's contractual relationship with Allianz Life did not grow into a fiduciary one because Miller does not allege that Keturah "placed special trust and confidence in Allianz Life to make decisions about her

5

financial affairs, or that Allianz Life accepted such a responsibility.  Nor has Miller alleged that Allianz Life understood its relationship with Keturah as anything but contractual." (*Id.* at PageID# 25.)  Therefore, Allianz Life argues, the relationship between Keturah and Allianz Life was only ever contractual, not fiduciary, and did not impose a fiduciary duty on Allianz Life.

Allianz Life also argues that Miller's allegation that Keturah "lacked financial sophistication" is irrelevant to his claim.  (*Id.*)  Allianz Life argues that under Ohio law, an insurance customer has a duty to examine her coverage provided and to know the contents of her coverage; therefore, whether Allianz Life has a superior understanding of the product is irrelevant, as is Keturah's alleged unfamiliarity with annuity contracts.  (*Id.*)

In response, Miller argues that the Court must accept as true that Keturah was "of advanced age, diminished health, limited formal education, and with limited knowledge and/or competence to appreciate financial, insurance and investment products, and lacked the capacity . . . to provide informed consent."  (Doc. No. 8 at PageID# 141.)  Further, Miller alleges that Allianz Life had a duty to provide insurance and advisory services in Keturah's best interest, as well as to provide "informed consent, advice, and counsel."  (*Id.*)

Miller argues that he not only properly plead the existence of a fiduciary duty, but also that Allianz Life took steps to foster such a relationship with Keturah.  (*Id.*)  Miller argues that, based on certain pieces of text in Keturah's 2007 Annuity Contract, it is "reasonable to infer that Allianz" attempted to create a fiduciary relationship with Keturah.[2]  (Doc. No. 8 at PageID# 143.)  For

---

[2] Miller did not attach a copy of Keturah's 2007 annuity contract to his Complaint.  However, Allianz Life attached the contract to its Motion to Dismiss as Exhibit 1.  (*See* Doc. No. 3-1.)  In ruling on a Rule 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430.  Here, Miller expressly references and discusses the 2007 annuity

example, on the first page of the contract, adjacent to Allianz Life's logo is the line "Relationships for life." (*Id.* at PageID# 142.)  Below that line, Allianz Life wrote "Thank you for your business – and your trust." (*Id.*)  Miller argues that, on the same page, Allianz Life states, "[y]ou trust your independent financial professional to help you make important decisions like this, and that's why we only sell our products through independent financial professionals." (*Id.*)  According to Miller, Allianz Life's emphasis on developing lifelong customer relationships, gratitude towards its customers, and language about "trust" and "important decisions" all amounts to an attempt by Allianz Life to foster a fiduciary relationship with Keturah.  (*Id.*)

Further, Miller points to an "Agent's Report" form attached to Keturah's 2007 contract that contains a handwritten note apparently from Allianz Life agent, Anthony Allen.  Allen wrote the following note next to Keturah's identification verification: "I have known the client for 20 yrs. [*sic*]." (*Id.* at PageID# 143.)  Miller argues that, by the time Keturah converted her annuity from a lump sum to fixed monthly payments in 2019, she would have had a 30-year relationship with Allen.  (*Id.*)  Miller also argues that Allen's choice to describe Keturah as a "client" connotes a fiduciary relationship.  (*Id.*)

Finally, Miller argues that he "has provided a short and plain statement" that sufficiently puts Allianz Life on notice of Miller's claim.  (*Id.*)  Miller states that "scant information" was made

---

contract in his Complaint.  (Doc. No. 1-1.)  Further, Miller does not dispute that this contract is central to his claims.  The Court finds that it may consider the 2007 annuity contract attached to Allianz's Motion to Dismiss without converting it to a summary judgment motion because Miller expressly references the contract in his Complaint.  *Bassett*, 528 F.3d at 430 ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto . . . and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.") (citing *Amini*, 259 F.3d at 502). *See also Northampton Restaurant Group, Inc. v. FirstMerit Bank, N.A.*, 492 Fed. Appx. 518, 521-22 (6th Cir. 2012) (same).  However, the Court does not take judicial notice of the correspondence Miller attaches to his Brief in Opposition (*see* Doc. No. 8-2), as such correspondence is not referenced in his Complaint, nor integral to the claims contained therein.  *Bassett*, 528 F.3d at 430.

available to him by Allianz Life and acknowledges "that it is likely that the Complaint will have to be amended to address these items in the near future."  (*Id.*)

In its Reply Brief, Allianz Life argues that Miller "alleges no facts to suggest that Allianz Life and Keturah were in a fiduciary relationship," which dooms Miller's breach of fiduciary duty claim. (Doc. No. 9 at PageID# 157.)  Allianz Life argues that Miller does not address *Shafron v. Aviva Life & Annuity Co.*, No. 1:11 CV 00732, 2014 WL 763238 (N.D. Ohio Feb. 21, 2014), in which another court in this District determined that an annuity-purchaser's breach of fiduciary duty claim failed because the plaintiff could not show the existence of a fiduciary relationship with the annuity-issuer. (*Id.*)  Allianz Life also argues that Miller ignores Ohio and Sixth Circuit precedent holding that the analogous relationship between insurer and insured "is an ordinary business relationship, not a fiduciary one."  (*Id.*, internal quotation omitted.)

Allianz Life argues that Miller's Complaint amounts to nothing more than "tenuous inferences," and that Miller alleges no facts to suggest that Allianz Life ever intended to become, or accepted the role of, a fiduciary with respect to Keturah.  (*Id.* at PageID# 157-58.)  With respect to Miller's excerpts from the 2007 annuity contract, Allianz Life argues that these excerpts are "marketing materials, in which Allianz Life thanked its customers for choosing its products" and "[s]imply thanking a customer for selecting a product does not create a fiduciary relationship."  (*Id.* at PageID# 158.)  Allianz Life argues that, if anything, these marketing materials "reinforce the fact that Allianz Life operated at arm's length from Keturah" because the excerpts state that Allianz Life only sells its products "through independent financial professionals."  (*Id.*)  Allianz Life argues that nowhere in the excerpt does it suggest that it assumes any kind of advisory nor fiduciary role with respect to Keturah or its other customers.  (*Id.*)  Rather, Allianz Life argues, these excerpts

demonstrate that it "simply issued Keturah an annuity contract through an independent financial professional.  That relationship, just like any other relationship between an insurer and a policyholder, was purely contractual."  (*Id.* at PageID# 158-59.)

Finally, Allianz Life argues that the fact that Keturah "may have been a customer of an independent insurance agent for years does not transform her contractual relationship with Allianz Life into a fiduciary relationship."  (*Id.* at PageID# 159.)  Allianz Life argues that *Tsepas v. J.P. Morgan Chase Bank*, No. 2016-CA-00177, 2017 WL 1250801 (Ohio 5th Dist. Ct. App. Apr. 3, 2017), an Ohio case affirming that a customer's decades-long relationship with a personal banker did not create a fiduciary relationship between the customer and the bank, is analogous to this situation.  (*Id.*) Allianz Life argues that even if Keturah engaged in ordinary transactions with the same sales agent over several decades, that does not demonstrate a fiduciary relationship between Keturah and Allianz Life.  (*Id.*)  Further, Allianz Life argues that referring to someone as a "client" does not transform everyday contractual relationships into fiduciary relationships.  (*Id.*)

Under Ohio law, a plaintiff alleging a breach of fiduciary duty must allege: "'(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom.'"  *Pasqualetti v. Kia Motors*, 663 F. Supp. 2d 586, 597 (N.D. Ohio 2009) (quoting *Werthmann v. DONet, Inc.*, 2005 WL 1490372, at *7 (Ohio Ct. App. June 24, 2005)).

The first element of a breach of fiduciary duty claim presupposes the existence of a fiduciary relationship.  A "fiduciary relationship is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust."  *Id.* (quoting *Comtide Holdings, LLC v. Booth Creek Management Corp.*, 554 F. Supp.2d 821, 826-27 (S.D. Ohio 2008)).  A fiduciary relationship may arise through

9

formal appointment or through an informal confidential relationship. *Anchor v. O'Toole*, 94 F.3d 1014, 1023-24 (6th Cir. 1996). An informal confidential relationship "is one where a 'person comes to rely on and trust another in his important affairs and the relations there involved are not necessarily legal, but may be moral, social, domestic, or merely personal.'" *Id.* Per Ohio law, "'[s]uch a confidential relationship, however, *cannot be unilateral.*'" *Id.* (citing *Craggett v. Adell Ins. Agency*, 635 N.E.2d 1326, 1331 (Ohio 8th Dist. Ct. App. 1993)). However, "[t]he vast majority of business relationships . . . do not give rise to a fiduciary relationship." *Pasqualetti*, 663 F. Supp. 2d at 597 (citing *Blon v. Bank One, Akron, N.A.*, 35 Ohio St.3d 98, 101, 519 N.E.2d 363 (Ohio 1988)).

It is well established that an annuity is a contract. *See, e.g., In re Andrews*, 301 B.R. 211, 214 (Bankr. N.D. Ohio 2003) (an annuity is "defined as a contractual right to receive fixed, periodic payments, either for life or for a term of years [or a] fixed sum payable to a person at specified intervals for a specific period of time or for life.") (internal quotation omitted); *see also Beard v. New York Life Ins. & Annuity Corp.*, No. 12AP–977, 2013 WL 4678105, at *3 (Ohio 10th Dist. Ct. App. 2013) ("An annuity is purely contractual in nature."). However, a contractual relationship alone does not automatically give rise to a fiduciary relationship. *See Blon*, 35 Ohio St.3d at 101 (Ohio 1988). Instead, contractual parties negotiate at arm's-length, each protecting his or her own interest. *See Umbaugh Pole Bldg. Co., Inc. v. Scott*, 58 Ohio St.2d 282, 287, 390 N.E.2d 320, 323 (Ohio 1979). A contractual relationship may grow into a fiduciary relationship "when *both* parties understand that a special trust or confidence has been reposed by one party in the other.'" *Pinkerton v. Gov't Employees Ins. Co.*, No. 5:18-CV-1371, 2019 WL 1026227, at *7 (N.D. Ohio Mar. 4, 2019) (emphasis added). At the motion to dismiss stage, a plaintiff must allege facts that a special trust was

10

created, such that the relationship between the two contractual parties was no longer an ordinary, arm's-length contractual transaction. *Id.*

The Court finds that Miller's breach of fiduciary duty claim fails because he does not plead "any facts that would support a finding that a special trust had been created, such that" Keturah's and Allianz Life's relationship was elevated from an ordinary business relationship to a fiduciary one. *Id.* Miller alleges that Allianz Life had a fiduciary duty towards Keturah, but "points to no special circumstances about [Keturah's] relationship with [Allianz Life] that would indicate that this was anything more than the typical" annuity-seller/annuity-purchaser relationship. *Wright v. State Farm Fire and Cas. Co.*, 555 Fed. App'x. 575, 580 (6th Cir. 2014).

In *Beard v. New York Life Ins. And Annuity Corp.*, *supra*, the plaintiff brought a similar breach of fiduciary duty claim against an annuity seller whom he alleged breached its fiduciary duty to his decedent father. *Beard*, 2013 WL 4678105 at *3. The plaintiff alleged that the defendant breached its fiduciary duty when it sold the plaintiff's father a replacement annuity that nullified a previous annuity and instead provided for monthly payments to the decedent for life, rather than a death benefit. *Id.* The Tenth District Court of Appeals explained:

> Ohio law does not impose a fiduciary duty on insurance agents or companies and their insureds. "Generally, the relationship between an insurance agent and his client is not a fiduciary relationship, but rather, an ordinary business relationship." *Advent v. Allstate Ins. Co.*, 10th Dist. No. 05AP–1092, 2006–Ohio–2743, ¶ 14. "While the law has recognized a public interest in fostering certain professional relationships, such as the doctor-patient and attorney-client relations, it has not recognized the insurance agent-client relationship to be of similar importance." *Nielsen Ent., Inc. v. Ins. Unlimited Agency, Inc.*, 10th Dist. No. 85AP–781 (May 8, 1986).

*Id.* Thus, the court affirmed the dismissal of plaintiff's breach of fiduciary duty claim, in part, on the ground that complaint failed to state a claim upon which relief could be granted. *Id.*

11

*Beard* is instructive here.  Ohio law does not impose a fiduciary relationship on the insurance agent-client relationship.  *Id.*; *see also Slovak v. Adams*, 141 Ohio App.3d 838, 846, 753 N.E.2d 910 (Ohio 6th Dist. Ct. App. Mar. 16, 2001) ("the relationship between an insured and the agent that sells the insurance is, without proof of more, an ordinary business relationship, not a fiduciary one"); *Craggett v. Adell Ins. Agency*, 92 Ohio App.3d, 443, 451-52, 635 N.E.2d 1326 (Ohio 8th Dist. Ct. App. Dec. 13, 1992).  Therefore, Miller must allege that some sort of special circumstance between Keturah and Allianz Life arose such that both parties understood that their ordinary insurance agent-client relationship was elevated into a fiduciary one.

Miller fails to do so.  He pleads no facts that render it plausible that either Keturah or Allianz Life ever viewed their relationship as a fiduciary one.  In his Brief in Opposition, Miller emphasizes that the 2007 annuity contract contains a written statement from Allen that he had known Keturah for 20 years.  (Doc. No. 8 at PageID# 143.)  Indeed, the 2007 annuity contract contains a form titled "Agent's Report," on which the agent is required to verify the annuity applicant's identity by reviewing the applicant's driver's license, mark down the applicant's license number, and mark down the agent's own name and agent number.  (*Id.*)  Allen completed Keturah's "Agent's Report" form. (*Id.*)  On the form, Allen checked the box indicating that he verified Keturah's identity by reviewing a driver's license.  (*Id.*)  The line with Keturah's driver's license number is redacted.  (*Id.*)  Next to the space where Keturah's driver's license number was presumably written, Allen wrote the following note: "I have known the client for 20 yrs." (*Id.*)  However, the existence of this handwritten note does not prove that Allianz Life viewed itself as Keturah's fiduciary; it simply indicates that the agent could verify Keturah's identity because, as of August 2007, he had known Keturah for 20 years.  Miller alleges nothing further about Keturah's relationship with Allen.  Additionally, Miller does not

12

allege that this particular agent encouraged Keturah to elect the monthly payment option, nor does he allege that Keturah viewed Allianz Life as a fiduciary when she elected her annuity option in August 2019. Indeed, beyond alleging that Allianz Life's agents "induced Keturah to exercise an Annuity Option Agreement," and that Keturah had little knowledge of financial or insurance products, Miller alleges no other facts about the circumstances surrounding Keturah's August 13, 2019 decision to convert her annuity into monthly payments. (Doc. No. 1-1 at ¶ 5.)

Even drawing the inference in Miller's favor that Keturah viewed her relationship with Allianz Life as a fiduciary one, Miller's claim, as plead, still fails because "[a] party cannot . . . *unilaterally* elevate a relationship to a fiduciary level." *Pasqualetti*, 663 F. Supp.2d at 598. Miller alleges no facts that plausibly suggest that Allianz Life understood its relationship with Keturah to be anything other than a contractual, arm's-length business relationship. Miller's argument that Allianz Life attempted to forge a fiduciary relationship through its platitudes about "Relationships for life" and customers' trust is unavailing. These marketing material excerpts do not remotely suggest that Allianz Life was attempting to create a fiduciary relationship with Keturah.

Compare the case at bar to *Anderson v. Allianz Life Insur. Co. N.Am.*, No. 4:07 CV 3287, 2008 WL 11378852, at *4 (N.D. Ohio Apr. 24, 2008). The *Anderson* plaintiff's claims survived at the motion to dismiss stage because the plaintiff, the executor of the annuity-purchaser's estate, alleged in great detail how a sales team, acting on behalf of the defendant, intentionally approached the 96-year-old annuity-purchaser, sought to gain the annuity-purchaser's trust, promised the annuity-purchaser that his investments would pay out a lump sum to his intended beneficiaries upon his death, and held themselves out as having expertise in senior citizen investment strategies and estate planning. *Id.* Miller alleges no facts that suggest that Allianz Life or its agents attempted to develop

13

a "special relationship of trust" with Keturah. *See Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 521-22 (6th Cir. 1999). *See also, e.g., Umbaugh Pole Bldg. Co., Inc.* 58 Ohio St.2d at 287 (finding that an institutional lender's offering of business advice to a struggling commercial borrower was insufficient to create a fiduciary relationship between the two, even though the advice was offered in a "congenial atmosphere and in a sincere effort to help" the plaintiffs; the relationship nevertheless remained an ordinary business relationship between an institutional lender and a borrower).

Miller also alleges that, because Keturah was elderly and suffered from diminished health, and possessed limited education and knowledge of insurance and investment products, she lacked the ability to "provide informed consent to the change to the Annuity." (Doc. No. 1-1 at ¶ 6.) However, an imbalance between a purchaser's and seller's knowledge does not give rise to a fiduciary duty on the part of the seller. *See, e.g., Greenberg*, 177 F.3d at 521-22 (6th Cir. 1999). Rather, it is typical in an arm's-length relationship, such as the one between insurer and insured in *Greenberg*, or the one between annuity-seller and annuity-purchaser in the case at bar, for a seller to possess "more expertise on the item to be sold and the buyer [to] typically rel[y] on the seller's representations. But this is insufficient in and of itself to establish a special relationship of trust." *Id.* Likewise, it is insufficient for Miller to allege that Allianz Life established a special relationship of trust with Keturah simply because it possessed more knowledge about annuities than she did. As the Sixth Circuit noted, "[t]o hold otherwise would impose fiduciary obligations on the seller of goods or services in the vast multitude of ordinary arm's-length transactions simply on the basis that the seller possessed superior knowledge of the product being sold." *Id.* at 522.

Miller alleges that Allianz Life had a duty to "provide both insurance and financial advisory services and to act in the best interest of the insured," but the facts standing alone do not plausibly

14

suggest how Allianz Life's fiduciary duty arose.  Miller's Complaint fails to properly assert a claim for breach of fiduciary duty.  *See, e.g., Cedar View, Ltd. v. Colpetzer*, No. 5:05-CV-00782, 2006 WL 456482, at *2-3 (N.D. Ohio Feb. 24, 2006) ("Nowhere in the complaint does Cedar View claim that the creation of a fiduciary relationship between itself and Colpetzer and Moose was communicated and agreed upon."); *Macula v. Lawyers Title Ins. Corp.*, No. 1:07 CV 1545, 2008 WL 3874686, at *4 (N.D. Ohio Aug. 14, 2008) ("In these circumstances, however, Plaintiffs' Complaint provides no facts to support a claim of breach of fiduciary duty. Instead, the Complaint merely makes conclusory legal assumptions that do not provide fair notice of the grounds upon which the claim may rest. As such, Plaintiffs fail to properly assert a claim for a breach of fiduciary duty . . . ."); *cf. Anderson*, 2008 WL 11378852, at *4 (plaintiff estate executor's breach of fiduciary duty claim survived the motion to dismiss stage because the plaintiff plead sufficient facts alleging that salesmen, acting on behalf of the defendant, held themselves out as experts in advising senior citizens on investments and estate planning to the extent that a fiduciary relationship may have arisen).

Accordingly, Miller's breach of fiduciary duty claim is dismissed.

**B.     Negligence (Count Two)**

In Count Two, Miller alleges that Allianz Life "had a duty to give sound and proper advice regarding the Annuity."  (Doc. No. 1-1 at ¶ 15.)  Miller alleges that Allianz Life breached that duty by "recommending and/or advising Keturah to convert the Annuity from a product with a death benefit of $88,000 to a monthly payment of $1,034.31 with no death benefit."  (*Id.* at ¶ 16.)  Miller argues this advice was improper and constituted a breach of Allianz Life's duty.  (*Id.* at ¶ 17.)

First, Allianz Life argues that it is unclear whether Ohio recognizes a claim for "negligent advice."  (Doc. No. 3 at PageID# 26.)  It argues that a "handful of cases" acknowledge a claim for

15

"negligent *investment* advice," but these claims are often dismissed on statute of limitation grounds before reaching the merits or discussing the elements of the claim.  (*Id.*, emphasis added.)  Even assuming that a claim for negligent advice exists, Allianz Life argues that Miller fails to plead a viable claim because Allianz Life did not owe a duty to Keturah to provide her with investment advice.  (*Id.*)  Further, Allianz Life argues that, beyond Miller's conclusory allegation that Allianz Life owed a duty to advise Keturah, Miller alleges no facts to suggest that Allianz Life held itself out as a financial advisor to Keturah, accepted fees for providing financial advice, or exercised any control over her finances.  (*Id.* at PageID# 27.)  Because Allianz Life had no duty, it argues, Miller's negligence claim fails.

Separately, Allianz Life argues that Miller's negligence claim fails under Ohio's economic loss doctrine because Miller only alleges that Daniel suffered economic harm.  (*Id.*)  Allianz Life argues that Ohio law is clear that when a contract exists between two parties, the plaintiff cannot recover purely economic damages under tort.  (*Id.*)  Allianz Life urges the Court to look to *Shafron v. Aviva Life & Annuity Co.*, *supra*, in which this Court "applied the economic loss doctrine to a plaintiff's negligence claim arising from the sale of an equity-indexed annuity."  (*Id.* at PageID# 27-28.)  Allianz Life argues that the plaintiff in *Shafron* could not recover damages for his financial injury—even though he also pleaded damages for physical pain, suffering, and embarrassment—because the only specifically-pled losses were purely economic ones.  (*Id.*)  Allianz Life believes "the economic loss doctrine compels the same result here: because Miller alleges that Daniel incurred only economic harm, his negligence claim fails."  (*Id.*)

In response, Miller argues that Allianz Life refused to provide the Miller family or the Millers' counsel any documentation prior to the lawsuit.  (*Id.*)  Miller also argues that he is "now aware,"

based on Exhibit 1 to Allianz Life's Motion, Keturah's 2007 Annuity Contract, "that there was a 30-year relationship between the Allianz employee and Keturah, and it is more than reasonable to infer that this individual acted as an advisor to her." (*Id.*; *see also* Doc. No. 3-1.)  Miller urges the Court to accept his allegations as true that Allianz Life "had a duty to advise and/or recommend whether a frail, elderly Amish woman should convert an annuity with no benefit, late in life, or not." (*Id.*)

Separately, Miller argues that the economic loss doctrine does not apply to his negligence claims. (*Id.* at PageID# 145-46.)  Miller argues he is not "prosecuting a contract action and seeking recovery in tort, but rather alleging torts—namely breach of fiduciary duty and negligence—and is entitled to recovery in tort." (*Id.* at PageID# 146.)

In its Reply Brief, Allianz Life argues that Miller does not identify any Ohio case "recognizing a cause of action for negligent investment advice." (Doc. No. 9 at PageID# 160.)  Allianz Life also argues that Miller fails to "allege facts to establish the elements of an ordinary negligence claim." (*Id.*)  It argues that Miller must at least "plead facts to show that Allianz Life owed Keturah a duty to provide investment advice," but beyond Miller's "conclusory allegation" that Allianz Life owed Keturah a duty to provide sound advice, "Miller alleges no facts to support this conclusion." (*Id.*)

Negligence claims are predicated upon the existence of a duty.  *See Caterpillar Fin. Servs. Corp. v. Harold Tatman & Sons Ents., Inc.*, 50 N.E.3d 955, 963 (Ohio 4th Dist. Ct. App. Nov. 20, 2015) (to establish negligence claim, plaintiff must show the existence of a duty, a breach of that duty, and that the breach was the proximate cause of the plaintiff's injury).  Miller alleges a claim of "negligent advice." (Doc. No. 1-1 at ¶¶ 14-17.)  He alleges that Allianz Life "had a duty to give sound and proper advice regarding the Annuity" and that Allianz Life "breached that duty by, *inter alia* recommending and/or advising Keturah to convert the Annuity from a product with a death

17

benefit of $88,000 to a monthly payment of $1,034.31 with no death benefit." (*Id.* at ¶¶ 15-16.)

Allianz Life's advice to do so "was improper and constituted a breach of Defendants' duty," and

resulted in damages of more than $25,000 to Miller. (*Id.* at ¶ 17-18.)

The Court need not decide whether the claim of negligent investment advice is cognizable

under Ohio law because Miller does not plead enough facts to plausibly show the existence of a duty

owed from Allianz Life to Keturah. *See Twombly*, 550 U.S. at 555-556; *see also Universal Tube &*

*Rollform Equip. Corp. v. YouTube*, *Inc.*, 504 F. Supp.2d 260, 270 (N.D. Ohio 2007) ("YouTube

criticizes Universal for merely reciting the elements of a negligence claim, a characterization that is

mostly accurate."). In his Brief in Opposition, Miller appears to concede that his Complaint is light

on factual allegations: he acknowledges Allianz Life's argument that Miller "alleges no facts to

suggest that Allianz Life held itself out as a financial advisor to Keturah," and asserts that Allianz

Life hampered his inability to obtain documentation relating to Keturah's annuity contract prior to

drafting his Complaint. (Doc. No. 8 at PageID# 145.) However, Miller also asserts that he is now

aware that "there was a 30-year relationship between the Allianz employee and Keturah, and it is

more than reasonable to infer that this individual acted as an advisor to her." (*Id.*)

The Court disagrees. First, while Miller infers that the relationship between the individual

who "advised" Keturah lasted for 30 years, Miller offers absolutely no facts to support the inference.

The only fact in front of the Court is that, on August 31, 2007, a man named Anthony Allen verified

Keturah's identity because he had known Keturah for 20 years. Miller does not allege that Allen

advised Keturah before or after August 31, 2007. Miller alleges no facts about the intervening 12

years between August 31, 2007, when Keturah purchased the annuity, and August 13, 2019, when

Keturah opted into monthly annuity payments. Second, Miller never alleges that Allen, who verified

18

Keturah's identity on August 31, 2007, is the same individual who spoke with Keturah about converting her death benefit into monthly annuity payments twelve years later.  Third, Miller identifies no contractual provisions or agreements that could suggest that Allianz Life and Keturah established some kind of advisory relationship.  Miller's Complaint, as currently plead, does not adequately plead "enough facts to state a claim to relief that is plausible."[3]  *Twombly*, 550 U.S. at 570.  Because Miller does not "nudge[ ] [his] claim[ ] across the line from conceivable to plausible," this claim should be dismissed.  *Id.*

Relatedly, the Court finds that, even if Miller plead a plausible set of facts to support his negligence claim, it would still fail because Miller's negligence claim is precluded by the economic loss doctrine.  Under Ohio law, "'tort liability may not be imposed for purely economic damages.'"  *Brainard v. American Skandia Life Assur. Corp.*, 432 F.3d 655, 665 (quoting *Floor Craft Floor Covering, Inc. v. Parma Community General Hospital Ass'n*, 54 Ohio St.3d 1, 560 N.E.2d 206, 208

---

[3] In their briefing, both parties extensively debate the applicability of *Alton v. Wyland* to the case at bar.  While the Court agrees with Allianz Life that Miller's claim fails for the reasons discussed above, the Court disagrees that *Alton* is applicable here.  In *Clemens v. Nelson Fin. Group, Inc.*, Ohio's Tenth District Court of Appeals subsequently interpreted *Alton*'s negligent investment advice holding to address claims of negligent *misrepresentation*, *not* negligence:

> In *Alton*, this court held that "one who holds himself out to be an investment advisor and for a fee gives investment advice to another is liable to such other person if he negligently gives inaccurate advice causing damage to the other person as a result of relying upon such investment advice." *Id.* at 689, 595 N.E.2d 993. Plaintiffs contend that *Alton* recognized a discrete, preexisting duty in tort. According to plaintiffs, this recognition excludes their claim, which is based on that duty, from the ambit of the economic-loss rule. We disagree.
> We interpret our holding in *Alton* as addressing negligent misrepresentation, which is different from a negligence claim. A person is liable for negligent misrepresentation if he or she, in the course of business, negligently supplies false information, knowing that the recipient intends to rely on it in business. *Corporex* at ¶ 9. **In *Alton*, we articulated one way in which an investment advisor could be liable for negligent misrepresentation.** *Alton* is inapplicable here because the claim at issue is for negligence, not negligent misrepresentation.

*Clemens v. Nelson Fin. Group, Inc.*, No. 14AP–537, 2015 WL 1432604, at *8 (Ohio 10th Dist. Ct. App. Mar. 31, 2015) (emphasis added).  For all of the parties' discussion of *Alton*, it does not apply here as Miller does not plead a negligent *misrepresentation* claim.

(1990)).  "'For claims sounding in negligence, the well-established rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.'"  *Id.*  In *Brainard*, a "group of unsophisticated investors" lost money after investing in variable annuities.  *Id.* at 658-59.  The Sixth Circuit held that the District Court properly dismissed the plaintiff-investors' negligence claims because the investors only suffered economic losses.  *Id.* at 665.  Exceptions to the economic loss doctrine apply if the plaintiff alleges injury to persons or damage or property.  *See, e.g., Ferro Corp. v. Blaw Knox Food & Chem. Equip. Co.*, 700 N.E.2d 94, 98 (Ohio 8th Dist. Ct. App. 1997) (citing *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d at 51, 537 N.E.2d at 635-36 (Ohio 1989)).  An exception to the economic loss doctrine also applies if the plaintiff alleges negligent misrepresentation.  *See Clemens*, 2015 WL 1432604, at *8.  However, none of these exceptions apply here: Miller brought a negligence claim and, like the *Brainard* plaintiffs, cannot recover his purely economic damages through tort. Therefore, Miller's cause of action for negligence must be dismissed.

### C.    Negligent Hiring, Supervision, Training, Education (Count Three)

In his final claim, Miller alleges that some or all of the alleged wrongful acts may have been committed by employees and/or agents of Allianz Life, whose identities are not currently known. (Doc. No. 1-1 at ¶ 20.)  Miller alleges that these employees were negligent, as described in Counts One and Two of his Complaint, and that Allianz Life knew or should have known of its employees'/agents' negligence.  (*Id.* at ¶ 21, 22.)  Miller alleges that Allianz Life failed to "properly supervise, train, and/or educate its employees and/or agents," which resulted in those employees and/or agents "commit[ting] the wrongful acts described above." (*Id.* at ¶ 23.)

20

In its Motion, Allianz Life argues that, because Miller's first two claims fail, his final claim necessarily fails because it is a prerequisite to a negligent hiring and supervision claim that an agent or employee committed an underlying tort. (Doc. No. 3 at PageID# 28.) Separately, Allianz Life argues that Miller fails to plead sufficient facts to allow this Court to reasonably infer that Allianz Life negligently hired or supervised the agents and/or employees. (*Id.* at PageID# 29.) It argues that Miller simply pleads the elements of a negligent hiring and supervision claim without any factual allegations and such a "threadbare pleading cannot survive a motion to dismiss." (*Id.*) In addition, Allianz Life reiterates its economic loss doctrine argument: Miller's negligent hiring and supervision claim cannot survive because Miller cannot recover purely economic damages in tort, and thus Miller's claim is barred by the economic loss doctrine. (*Id.* at PageID# 29-30.)

Finally, Allianz Life argues that all of Miller's claims fail because he cannot demonstrate that Daniel has been damaged by Keturah's decision to opt into lifetime monthly payments. It argues that it is unclear whether Keturah's decisions caused Daniel any economic harm because, although he was previously been entitled to an $88,000 lump-sum payment upon Keturah's death, he remains entitled to monthly payments of $1,034, or $12,408 per year. (*Id.* at PageID# 30-31.) Because Daniel is alive and his date of death is yet unknown, it is possible that he might receive *more* than $88,000— provided, of course, that Daniel, a 94-year-old man, survives Keturah by *eight* years. (*Id.*) Allianz Life argues that "it is premature to suggest" that Daniel has been harmed by Keturah's decision, and therefore he is precluded from recovery of damages. (*Id.*)

In response, Miller argues that he sufficiently plead both of his first two claims, and that he sufficiently plead all required elements in his negligent hiring and supervision claim. (Doc. No. 8 at PageID# 146-47.) Miller argues that this Court must accept his allegations as true that John Does

No. 1-5 were negligent in their commission of tortious acts against Keturah.  (*Id.*)  Miller argues that Allianz Life knew or should have known of this negligence and that this negligence was the proximate cause of his damages.  (*Id.*)

Miller also responds to Allianz Life's argument that Daniel has not been damaged by Keturah's annuity decision.  He asserts that Allianz Life "advances the unique argument" that Daniel did not suffer damage when it influenced Keturah to opt for a "very low monthly payment in lieu of a large lump sum benefit . . . ."  (*Id.* at PageID# 147.)  Miller argues that this ignores the reality of the value of a lump-sum payment—which Miller alleges could have been put towards defraying the costs of Daniel's skilled nursing care—as well as the slight probability that a frail 94-year-old man will live to be 101 or 102 years old.  (*Id.* at PageID# 147-48.)

On Reply, Allianz Life reiterates that "Miller failed to allege facts that "support the elements of a negligent hiring and supervision claim."  (Doc. No. 9 at PageID# 161.)  It argues that Miller fails to identify any allegedly negligent employees, plead facts to demonstrate how the employees were incompetent, plead facts to suggest that Allianz Life was aware of its employees' negligence, or draw a connection between an Allianz Life agent and harm to Miller.  (*Id.*)  Allianz Life also reiterates its economic loss doctrine argument with respect to Miller's negligent hiring and supervision claim.  (*Id.*)  Finally, Allianz Life reiterates its argument that Miller has not yet suffered any damages because he could theoretically live long enough to receive a total of $88,000 in monthly payments.

The Court finds that Miller's negligent hiring and supervision claim cannot proceed because Miller has failed to plausibly allege Allianz Life's employees committed a tort, an underlying requirement for a negligent hiring and supervision claim.  As discussed above, Miller's breach of fiduciary duty and negligent advice claims fail.  Miller has alleged no other tortious actions on the

22

part of Allianz Life or its employees and/or agents.  Therefore, Miller's negligent hiring and supervision claim necessarily fails.  *See, e.g., Strock v. Pressnell*, 38 Ohio St.3d 207, 217, 527 N.E.2d 1235, 1244 (Ohio 1988) ("[A]n underlying requirement in actions for negligent supervision and negligent training is that the employee is individually liable for a tort or guilty of a claimed wrong . . . .").

Relatedly, the Court's discussion above of the economic loss doctrine applies with equal force to Miller's claim of negligent hiring and supervision.  *See Ferro Corp.*, 700 N.E.2d at 98 ("It is the character of the loss, here the economic losses incurred as a result of the failure of the product, that determines that the cause of action lies in contract. . . . We see no distinction in appellant's claim of negligence and negligent supervision in this setting.") (internal citations omitted).  The economic loss doctrine prevents Miller from recovering purely economic damages on his negligent hiring and supervision claim.  Miller's negligent hiring and supervision claim should be dismissed.

### D. Speculative Damages

The Court is cognizant of Allianz Life's argument that Miller cannot show that he suffered any damages when Keturah selected a monthly annuity payment of $1,034 for the rest of her life and his life, instead of an $88,000 lump-sum payment.  However, because Miller's claims fail for other reasons, the Court need not address this argument.

### V.    Conclusion

Accordingly, and for all the reasons set forth above, Defendant's Motion to Dismiss (Doc. No. 3) is GRANTED.

As to those claims which are dismissed, the dismissal is without prejudice in light of the "well-established preference for allowing claims to be decided on their merits when possible."[4]  *See Burkeen v. A.R.E. Accessories, LLC,* 758 Fed. App'x. 412, 416 (6th Cir. Dec. 17, 2018).

**IT IS SO ORDERED.**

       *s/Pamela A. Barker*

       PAMELA A. BARKER

Date:  September 23, 2020       U. S. DISTRICT JUDGE

---

[4] The Court has not considered Plaintiff's Declaration of Walter Miller (Doc. No. 8-1) for purposes of deciding this Motion to Dismiss.  *See Bassett*, 528 F.3d at 430; *see* n.2, *supra*.  However, in his Declaration, Walter Miller avers that he served as power of attorney for his mother, Keturah "prior to" her death and also that, prior to her death, he contacted Allianz Life "dozens" of times to obtain a copy of Keturah's annuity.  (Doc. No. 8-1 at ¶¶ 2, 3.)  The Court notes that Miller's Complaint, as currently plead, contains no such facts.  Moreover, the Complaint does allege that on or about August 13, 2019, or just two months before Keturah's death, which the Complaint alleges occurred on October 13, 2019, Keturah executed the Annuity Option Agreement.  (Doc. No. 1-1 at ¶¶ 5, 7.)  The Complaint also alleges that Keturah lacked the capacity to enter into the Annuity Option Agreement.  (*Id.* at ¶ 6.)  If alleged in a new complaint, the averments contained in Walter Miller's Declaration concerning him serving as power of attorney and requesting information from Defendant, when coupled with the effective date of the power of attorney and additional allegations concerning Keturah's lack of capacity to enter into the Annuity Option Agreement, arguably a new complaint would not be futile.  Moreover, Plaintiff's counsel acknowledged that "it is likely that the complaint will have to be amended … in the near future." Therefore, the Court dismisses Miller's claims without prejudice.